# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

DOROTHY A. SMULLEY,
    *Plaintiff*,

v.

MUTUAL OF OMAHA BANK, *et al.*
    *Defendants*.

No. 3:14-cv-00997 (JAM)

## RULING GRANTING MOTIONS TO DISMISS

Plaintiff Dorothy Smulley believes that various banks and related financial entities have engaged in a criminal racketeering enterprise under the federal Racketeer Influenced and Corrupt Organizations Act (RICO). Her allegations stem from the defendants' involvement with the financing and servicing of plaintiff's mortgage loan for a condominium and a longstanding dispute that plaintiff has had with her condominium association about the assessment and payment of fines and fees.

Defendants have moved to dismiss the complaint. Because I conclude that plaintiff has not alleged facts that give rise to plausible grounds to conclude that any of the defendants have taken part in a criminal racketeering scheme or any other violation of federal law, I will grant defendants' motions to dismiss plaintiff's federal law claims. I will decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims and will therefore dismiss the complaint without prejudice to plaintiff's pursuit of any state law remedies in the state courts of Connecticut.

### BACKGROUND

Plaintiff's amended complaint alleges facts that I accept as true for the purposes of this motion to dismiss to the extent that such factual allegations are not legally conclusory. The

1

complaint stems from a long-running dispute and other litigation between plaintiff and her condominium association, the Oronoque Shores Condominium Association No. 1 Inc. (Oronoque), in Stratford, Connecticut. Plaintiff alleges that in October 2011, she began receiving letters from attorneys for Oronoque—the law firm of Zeldes, Needle & Cooper (ZNC)—accusing plaintiff of violating Oronoque's bylaws and demanding payment of a fine. Between November 2011 and April 2012, plaintiff repeatedly contacted ZNC for clarification about which bylaws she had violated, but ZNC did not respond.

At the end of April 2012, plaintiff received an invoice for a fine of nearly $10,000 from Imagineers, which was Oronoque's property management company. This invoice indicated that the fine was being assessed for unauthorized additions and alterations to her condo. Plaintiff disputed the fine, and on June 15, 2012, she filed a lawsuit in Connecticut state court challenging the fine. Her state court lawsuit named as defendants ZNC, Imagineers, and certain individuals employed by ZNC and Imagineers.

In July 2012, Oronoque returned plaintiff's annual common charge assessment, which she had made payable to Oronoque, and requested that she make it payable to ZNC. Plaintiff was also instructed to direct her monthly common charge assessments to ZNC. Because plaintiff believed she had no obligation to ZNC, she refused to reissue her checks to ZNC. Instead, she continued to make the checks payable to Oronoque and to mail them to Imagineers, and Oronoque continued to return the checks to her. In response, plaintiff began depositing the returned checks into Oronoque's bank account at Webster Bank.

In August 2012, Oronoque filed suit against plaintiff in state court over plaintiff's alleged violations of Oronoque's bylaws. Then, in November 2012, Oronoque filed a foreclosure action against plaintiff, alleging non-payment of common charge assessments. Meanwhile, plaintiff

continued to deposit her payments for the common charge assessments into Oronoque's account at Webster Bank. Plaintiff alleges that Oronoque's foreclosure lawsuit was false and misleading, because Oronoque knew that plaintiff was current in her payment of common charge assessments and that the allegation of non-payment was for other unpaid charges including the fine previously levied against her.

The complaint goes on to describe various machinations designed to avoid accepting plaintiff's payment of her common charge assessments. In June 2013, Webster Bank suddenly refused to accept plaintiff's deposits into Oronoque's bank account, even though it had previously been accepting such payments. In response to Webster Bank's refusal, plaintiff began depositing her common charge assessments into Oronoque's account at People's United Bank. According to plaintiff, Oronoque subsequently closed its accounts at Webster and People's United Bank in order to prevent plaintiff from making any more payments. Oronoque also blocked plaintiff from making online payments to its account at Mutual of Omaha Bank. In November 2013, plaintiff began paying her common charge assessments via electronic wire transfers from her bank into Oronoque's account at Mutual of Omaha Bank.

While enmeshed as described above in multiple state court lawsuits involving her condominium association payments, plaintiff filed this federal lawsuit in July 2014 against Oronoque, ZNC, Webster Financial Corporation (Webster), Imagineers, Mutual of Omaha Bank, and a bank employee, alleging a variety of state and federal claims, including a RICO claim. *See* Doc. #1. In October 2014, I dismissed the complaint under the *Colorado River* abstention doctrine, based on the fact that plaintiff had multiple pending state court actions arising from the same facts. *See* Doc. #53; *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Plaintiff appealed the dismissal. While her appeal was pending, plaintiff reached a settlement agreement with all of the many defendants except Webster. Plaintiff notified the Second Circuit of the settlement and moved to withdraw the defendants involved in the settlement as parties from the case, leaving Webster as the only defendant. The Second Circuit granted plaintiff's motion to withdraw the defendants and then found that the *Colorado River* abstention doctrine no longer applied, because plaintiff did not have any concurrent, parallel actions in state court pending against Webster. *See Smulley v. Mut. of Omaha Bank*, 634 F. App'x 335 (2d Cir. 2016). Accordingly, the Second Circuit vacated my order dismissing plaintiff's complaint and remanded to me the case against Webster—the sole remaining defendant—in April 2016. *Id.* at 337.

A few months after the case was remanded to me, plaintiff decided to amend her complaint and to join four new defendants: JP Morgan Chase Bank (Chase), Fannie Mae, the Federal Housing Finance Agency (FHFA), and Mortgage Electronic Registration Systems (MERS). Doc. #75. I granted plaintiff's motions for joinder and to amend. Doc. #90.

The amended complaint (now the operative complaint in this case) added allegations against the new defendants. The allegations relate primarily to actions taken by the defendants in accordance with a form that plaintiff signed about 12 years earlier when she refinanced her condominium in 2004. Webster was the mortgagee in this refinancing, and defendant MERS was Webster's nominee. At the time of the refinancing, plaintiff signed a boilerplate form known as "Form 3140," a Fannie Mae/Freddie Mac multistate condominium rider form. *See* Doc. #79 at 55–56; https://www.fanniemae.com/content/legal_form/3140.pdf. Paragraph F of Form 3140 includes standard language about the right of the lender to make necessary payments to third parties if the borrower fails to make such payments in the first place:

4

> If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

*Ibid*. The amended complaint alleges at various points that defendants and non-defendants (including former defendants) acted in concert to "activate" the payment provisions of Paragraph F as part of some kind of unlawful scheme. *See, e.g.*, Doc. #79 at 10 (¶ 28), 34–36 (¶¶ 150–62).

Plaintiff alleges that in August 2013, one of ZNC's attorneys contacted Chase, the servicer of plaintiff's mortgage, and told Chase that plaintiff was delinquent in her payment of common charge assessments (which she allegedly was not). In August 2014, Chase charged $500 to plaintiff's mortgage account. Between August 2014 and February 2016, Chase repeatedly made charges against plaintiff's mortgage account without plaintiff's knowledge, totaling $2,420.04. Chase also reported plaintiff in foreclosure for nonpayment of common charges to three credit reporting agencies. Plaintiff claims that as servicer, Chase had no right to charge plaintiff's mortgage account. Plaintiff further alleges that Chase's $500 charge to her mortgage account in August 2014 was done "[i]n order to secure a payout under Paragraph F of Form 3140." *Id*. at 12 (¶ 39).

Fannie Mae appears to be named as a defendant only because of its connection to Form 3140 and because Webster "sometime during 2004" allegedly transferred its beneficial interest in plaintiff's mortgage note to Fannie Mae. *Id.* at 5 (¶ 5). FHFA is named as a defendant because of its alleged authority to defend suits against Fannie Mae. *Ibid.* (¶ 4). As to the role of defendant MERS, plaintiff alleges that MERS failed to disclose certain information to plaintiff at the time of the assignment of her mortgage note in 2004 and falsely misled the state court about MERS's role as nominee. *See id.* at 24 (¶ 101).

According to the complaint, "[t]he defendants' individual and collective actions seek to deprive plaintiff of her equitable interest in her real property and, at the same time, capture and redirect plaintiff's equity toward themselves." *Id.* at 13 (¶ 47). The complaint goes on to allege that "[t]hese unlawful practices use 'loop holes' in Fannie Mae Form 3140 for which Paragraph F was intentionally and specifically designed and which, statutorily, give the appearance of lawful [actions] when, in fact, the practices employed deprive borrowers of their right of due process which deprivation results in a scheme of conspiracy, extortion and fraud." *Id.* at 13–14 (¶ 47); *see also id.* at 50 (¶ 188) (alleging that "[p]laintiff has been deprived of due process and has had civil actions, including foreclosure unsupported by the evidence of the record, filed against her, for the sole purpose of activating Fannie Mae's Form 3140 Paragraph F" and that "Fannie Mae continues to inflict violations of due process through the use of unconscionable Form 3140"). Plaintiff otherwise alleges that the fraudulent scheme to which she was subjected "has been directed towards hundreds of persons, all unit owners . . . and . . . has spanned many years." *Id.* at 51 (¶ 190).

The complaint alleges a federal civil RICO claim against all five defendants, as well as a wide range of state law claims. Although plaintiff does not delineate a separate count for this claim, *see id.* at 2 (listing specific counts of complaint), plaintiff also seems to allege a Fifth Amendment Due Process claim against defendants Fannie Mae and FHFA.

## DISCUSSION

The background principles governing a Rule 12(b)(6) motion to dismiss are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770

F.3d 170, 177 (2d Cir. 2014). Moreover, "'[a]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to survive a motion to dismiss. *Mastafa*, 770 F.3d at 177 (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (noting that court is "not bound to accept as true a legal conclusion couched as a factual conclusion" or "to accept as true allegations that are wholly conclusory") (citations and internal quotation marks omitted).

To be sure, "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Still, even a *pro se* complaint must plead enough facts to state a plausible claim for relief. "We have noted our obligation to construe pro se complaints liberally, even as we examine such complaints for factual allegations sufficient to meet the plausibility requirement." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). In short, my role in reviewing the motions to dismiss is to determine whether plaintiff's amended complaint—apart from any of its conclusory allegations and construing its *pro se* allegations liberally—sets forth sufficient facts to state a plausible claim for relief.

### *Civil RICO Claim*

Plaintiff first alleges a claim against all defendants for violations of the civil RICO statute, 18 U.S.C. § 1962(c), and for conspiracy to violate the RICO statute pursuant to 18 U.S.C. § 1962(d). The RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate in the conduct of such

7

enterprise's affairs through a pattern of racketeering activity. To state a claim under § 1962(c), "a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotations and citation omitted).

According to plaintiff, the five defendants in this case formed an enterprise together with non-defendants (some of whom were formerly defendants in this case) for "the purpose of . . . secur[ing] foreclosure judgments on individual condominium properties through fraudulent means and to use those judgments to extract money from the owners of the condominiums (unit owners) through their equity interest thereby depriving the owners of their equity assets." Doc. #79 at 37 (¶ 168). She alleges that the enterprise accomplishes its purpose by refusing to accept unit owners' common charge assessments, thus creating false debt, and then bringing foreclosure actions in state court against the unit owners on the basis of that false debt. Insofar as the named defendants are involved, plaintiff claims that their role in the RICO scheme is to "activate" and enforce Paragraph F of Form 3140, which allows a lender to pay a borrower's unpaid condominium dues and assessments without prior notice to the borrower, and then to charge the borrower for that debt, with interest.

So far as I can tell from the somewhat convoluted allegations of the amended complaint, the linchpin of plaintiff's RICO claims against the five named defendants is her contention that there is something unlawful, fraudulent, or nefarious about Paragraph F of Form 3140. Indeed, at oral argument on defendants' motions to dismiss, plaintiff clarified that the conduct underlying her RICO claim is the conduct that is expressly permitted by Paragraph F of Form 3140. Plaintiff contends that Paragraph F is invalid and unconstitutional because it does not require a lender to

8

give prior notice to a borrower before the lender takes action pursuant to Paragraph F (*i.e.*, before the lender pays the borrower's unpaid condominium assessments and then includes that amount as debt due on the loan).

Insofar as plaintiff's RICO allegations rely on her allegation that there is something illegal about Paragraph F of Form 3140, I conclude that plaintiff has not plausibly alleged a RICO claim. Paragraph F is part of a standard, widely used multi-state condominium rider form, which plaintiff admits that she signed in 2004 when she refinanced her mortgage loan for her condominium. In order to protect a lender's interests and security, it is standard practice in mortgage loan agreements for the lender to reserve the right to make payments to third parties that the borrower is required to but fails to make and then for the lender to charge the borrower for these payments. The conduct by defendants that plaintiff has identified as underlying her RICO claim is conduct that is consistent with the express agreed-upon terms of plaintiff's mortgage agreement and is not otherwise in violation of any law. *Cf. Cichoki v. Bank of Am.*, 2013 WL 6859027, at *7 (D. Mass. 2013) (dismissing claims against Bank of America where "the terms of plaintiffs' mortgage permitted Bank of America to do exactly what it did: to pay 'condominium dues and assessments' after the plaintiffs failed to do so, to add the 'amounts disbursed' as 'additional debt . . . secured by' the mortgage, to demand new payment of the new amount with interest, and to reject what it deemed partial monthly payments thereafter. . . . These actions are explicitly permitted by the mortgage and cannot, on their own, expose Bank of America to civil liability."). Insofar as plaintiff's claims of fraudulent and racketeering conduct rely on her contention that Paragraph F of Form 3140 is unlawful or improper, I find that there is no legal merit to this claim and that plaintiff has therefore not alleged plausible grounds of illegality to support a RICO claim.

To the extent that the complaint might be read not only to challenge the lawfulness of Paragraph F itself, but also to allege that defendants used (or abused) Paragraph F in a way that was unlawful or improper, plaintiffs' allegations still fall short of stating a civil RICO claim. Although plaintiff alleges that non-defendants (*e.g.*, Oronoque, Imagineers, and ZNC) worked together to create "false debt" for the purpose of foreclosing on her condominium, she does not allege specific facts to suggest or give rise to a plausible inference that any of the *named defendants* were culpably aware of or involved in that alleged scheme, or that they themselves acted improperly.

It is also clear to me that plaintiff has not established a pattern of racketeering activity by defendants as is required to state a claim under 18 U.S.C. § 1962(c). A "pattern of racketeering activity" must consist of at least two acts of racketeering activity, and "in order to provide such a pattern, a civil RICO plaintiff also must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014) (internal quotation marks omitted). Plaintiff's allegations of fraud must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Lundy*, 711 F.3d at 119.

Plaintiff alleges that "defendants and nondefendants . . . have used the mails and wires and have caused the mails and wires to be used, or reasonably knew the mails and wires would be used, in furtherance of their fraudulent scheme." Doc. #79 at 41 (¶ 176). Plaintiff lists numerous letters, phone calls, and internet activity in furtherance of the allegedly fraudulent scheme. *See id.* at 41–44. But the vast majority of these phone calls and letters involve non-defendants only. The instances of mail and wire fraud that involve defendants are not adequately specific in accordance with Federal

Rule of Civil Procedure 9(b) and/or do not relate to (and therefore cannot be in furtherance of) the alleged fraudulent scheme.

Because plaintiff's claim of a substantive RICO violation under 18 U.S.C. § 1962(c) fails, then plaintiff's conspiracy claim under 18 U.S.C. 1962(d) necessarily fails as well. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 108 (D. Conn. 2014) ("In this circuit, analysis of any RICO conspiracy claim begins with the premise that it necessarily fails where the underlying substantive claim is insufficiently pled."). Accordingly, I will dismiss plaintiff's civil RICO claim (and related conspiracy claim) for failure to state a plausible claim for relief.

### *Due Process Claim*

Plaintiff next alleges a Fifth Amendment due process claim against Fannie Mae and FHFA. Although she includes this claim under the heading "vicarious liability" (Count 18) in her amended complaint and groups it with an unconscionability claim, it appears to be a separate federal claim and thus I will construe it as such. Specifically, plaintiff contends that Fannie Mae's Form 3140 violated her due process rights "by failing to provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Doc. #79 at 36.

Defendants contend that plaintiff's due process claim should be dismissed because neither Fannie Mae nor FHFA are federal government actors subject to a Fifth Amendment due process claim. I agree. It is well established that a Fifth Amendment due process claim requires action by a federal government actor. *See Dusenberry v. United States*, 534 U.S. 161, 167 (2002). Courts to consider the question have found that Fannie Mae and FHFA are not government actors subject to constitutional claims. *See, e.g.*, *Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 95–96 (D.D.C. 2012) (dismissing First Amendment claims against Fannie Mae and FHFA because "[i]t is well-settled that pre-conservatorship, Fannie Mae was a private actor," and "Fannie Mae was not converted into a government entity when it was placed into

conservatorship; instead, FHFA stepped into the shoes of Fannie Mae. FHFA as conservator for Fannie Mae is not a government actor."); *In re Kapla*, 485 B.R. 136, 145–53 (Bankr. E.D. Mich. 2012), *aff'd*, 2014 WL 346019 (E.D. Mich. 2014); *see also* Doc. #115 at 21–24 (citing cases). Because I am persuaded by the reasoning of those decisions, I will dismiss plaintiff's due process claim.

*State Law Claims*

In light of my dismissal of plaintiff's federal law claims, the only remaining claims are state law claims. This Court does not have diversity jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1332, because complete diversity is lacking. Plaintiff is a citizen of Connecticut. Doc. #79 at 4 (¶ 1). Defendant Webster Financial Corporation is a bank holding company that is incorporated in Delaware but that has its principal place of business in Waterbury, Connecticut.[1] *See* 28 U.S.C. § 1332 ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"). Thus, there is no complete diversity between the parties and therefore no basis for diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2]

---

[1] *See* Doc. #79 at 4 (¶ 2); United States Securities and Exchange Commission, Form 10-K: Webster Financial Corporation, https://www.sec.gov/Archives/edgar/data/801337/000080133717000070/wbs-10k2016.htm (listing principal executive office as 145 Bank Street, Waterbury, Connecticut 06702); Conn. Sec. of State Business Inquiry, http://www.concord-sots.ct.gov/CONCORD/online?sn=PublicInquiry&eid=9740 (search for Webster Financial Corporation indicates business address at 145 Bank Street, Waterbury, CT 06702).

[2] Even if plaintiff had sued Webster Bank, N.A. as opposed to Webster Financial Corporation (as defendant Webster Financial Corporation argues she should have), there would be no complete diversity between the parties. Webster Bank is a national banking association and therefore is a citizen only of the state listed in its articles of association as its main office. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016). It appears that Webster Bank's main office is located in Waterbury, Connecticut. *See* U.S. Dep't of Treasury, Office of the Comptroller of the Currency, "National Banks Active as of 7/31/2017," https://www.occ.gov/topics/licensing/national-banks-fed-savings-assoc-lists/national-by-state-pdf.pdf (listing Waterbury, CT as location), Webster Bank, https://public.websteronline.com/location/main-office (listing main office in Waterbury, CT); Securities and Exchange Commission, EDGAR Company Filings for Webster Bank, N.A., https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001105837&owner=exclude&count=40 (listing address in Waterbury, CT).

I will decline to exercise my discretion to retain jurisdiction over these remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.C.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.") This ruling is without prejudice to plaintiff's right to seek any lawful and appropriate relief in the Connecticut state courts.[3]

## CONCLUSION

For the reasons explained above, defendants' motions to dismiss (Docs. #104, #111, #114) are GRANTED. This case is dismissed with prejudice because any amended complaint to state a RICO or due process claim would be futile. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 10th day of August 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[3] Webster's motion to dismiss (Doc. #104) argues for dismissal solely on the ground that plaintiff has named the wrong defendant. Webster explains that the allegations are all "based upon banking transactions which are transacted by Webster Bank, N.A.," Doc. #104 at 13–14, which is "a separate and distinct entity" from Webster Financial Corporation, its holding company. *Id.* at 4. I need not address this argument in light of the fact that I have concluded that plaintiff has not alleged plausible federal-law grounds for relief against Webster.